Joshua H. Haffner, SBN 188652
  (jhh@haffnerlawyers.com)
Alfredo Torrijos, SBN 222458
  (at@haffnerlawyers.com)
Vahan Mikayelyan, SBN 337023
  (vh@haffnerlawyers.com)
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, CA 91403
Tel: (213) 514-5681 / Fax: (213) 514-5682

*Attorneys for Plaintiff Luis Hernandez*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS HERNANDEZ, individually and as representative of a class of participants and beneficiaries and on behalf of the AT&T Retirement Savings Plan, | Case No. 2:25-CV-00676-ODW-PVC |
| Plaintiff, | HON. OTIS D. WRIGHT II |
| v. | **PLAINTIFF'S AMENDED OPPOSITION TO THE MOTION TO DISMISS BY DEFENDANTS** |
| AT&T SERVICES, INC.; and DOES 1-10, inclusive | |
| Defendants. | <u>Hearing:</u><br>Date: June 16, 2025<br>Time: 1:30 p.m.<br>Courtroom: 5D |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF RELEVANT FACTS.............................................................2

    A.      The Plan's Establishment and Funding. ....................................................2

    B.      Participant Vesting, Forfeitures, and Plan Expenses. ..............................2

    C.      Plan Administration and Fiduciary Responsibilities.................................4

    D.      Defendant's Use of Forfeited Assets and Harm to Participants.............5

III.    ARGUMENT .......................................................................................................5

    A.      Plaintiff States a Valid ERISA Breach of Fiduciary Duty Claim. ........5

        1.      The Plan Grants Defendant Discretion on How to Apply Forfeitures, and Defendant Acted as a Fiduciary in Exercising that Discretion. ..........6

        2.      The Election on How to Use Forfeitures Is a Fiduciary Activity, Not a Settlor Activity. ..............................................9

        3.      Defendant Breached Its Fiduciary Duty..............................................13

        4.      Plaintiff's Theory of Liability is Fully Consistent with Regulatory and Legislative Guidance. .........................................15

    B.      Plaintiff Properly Pled an Anti-Inurement Claim. .................................17

    C.      Plaintiff Properly Pled a Claim for Prohibited Transactions. ...............17

    D.      Plaintiff Properly Pled a Claim for Failure to Monitor. ........................18

IV.     CONCLUSION .................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Bafford v. Northrop Grumman Corp.*
    994 F.3d 1020 (9th Cir. 2021) .......................................................... 5

*Barker v. Am. Mobil Power Corp.*
    64 F.3d 1397 (9th Cir. 1995) ............................................................ 5

*Concha v. London*
    62 F.3d 1493 (9th Cir. 1995) ............................................................ 6

*Fifth Third Bancorp v. Dudenhoeffer*
    573 U.S. 409 (2014) ........................................................... 5, 13, 17

*Hughes Aircraft Co. v. Jacobson*
    525 U.S. 432 (1999) .......................................................................... 9

*Hutchins v. HP Inc.*
    2025 WL 404594 (N.D. Cal. Feb. 5, 2025) ............................. passim

*Hutchins v. HP Inc.*
    737 F.Supp.3d 851 (N.D. Cal. 2024) ............................................. 16

*Johnson v. Couturier*
    572 F.3d 1067 (9th Cir. 2009) .......................................................... 5

*Lockheed Corp. v. Spink*
    517 U.S. 882 (1996) .......................................................................... 9

*Madrigal v. Kaiser Found. Health Plan, Inc.*
    2025 WL 1299002 (C.D. Cal. May 2, 2025) .................................. 8

McManus v. Clorox Co.
    2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) ("Clorox I") ....... 6, 10

McManus v. Clorox Co.
    2025 WL 732087 (N.D. Cal. Mar. 3, 2025) .......................... 6, 14, 16

Naylor v. BAE Systems, Inc.
    2024 WL 4112322 (E.D. Va. Sept. 5, 2024) .................................. 7

Perez-Cruet v. Qualcomm Inc.
    2024 WL 2702207 (S.D. Cal. May 24, 2024) ............................ passim

*Randall on behalf of Wells Fargo & Co. 401(k) Plan v. GreatBanc Tr. Co.*
    2024 WL 713997 (D. Minn. 2024) ................................................ 18

Rodriguez v. Intuit Inc.
    744 F.Supp.3d 935 (N.D. Cal. 2024) ...................................... passim

*Sievert v. Knight-Swift Transp. Holdings, Inc.*
    2025 WL 1248922 (D. Ariz. Apr. 30, 2025) .................................. 8

*Solis v. Webb*
    931 F.Supp.2d 936 (N.D. Cal. 2012) .................................................................... 18

*Terraza v. Safeway Inc.*
    241 F.Supp.3d 1057 (N.D. Cal. 2017) ..................................................................... 6


**Statutes**

29 U.S. Code § 1106(a) ................................................................................................ 18

29 U.S.C. § 1103(c)(1) ................................................................................................. 17

29 U.S.C. § 1104(a) ........................................................................................ 13, 15, 17

29 U.S.C. § 1106(a) ............................................................................................... 17, 18

29 U.S.C. § 1106(b) ............................................................................................... 17, 18

## I.    INTRODUCTION

This case arises from Defendant AT&T Services, Inc.'s ("AT&T Services" or "Defendant") consistent misuse of millions of dollars in Plan assets—consisting of forfeited contributions from the AT&T Retirement Savings Plan ("Plan")—to directly benefit its parent company, AT&T Inc., at the direct expense of Plan participants.  As the Plan Administrator, AT&T Services was expressly granted discretion under the Plan's explicit terms to decide how to allocate these forfeited funds: either to offset future employer contributions or to defray administrative expenses that would otherwise be, and were, borne by Plan participants. Despite this clear discretionary authority and the equally clear fiduciary duty it triggered under ERISA, AT&T Services consistently and exclusively chose the path that enriched AT&T Inc., forcing participants to shoulder Plan expenses that these forfeitures could have covered. This conduct presents a straightforward application of settled ERISA principles: fiduciaries who exercise discretionary control over plan assets must act solely and prudently in the interests of plan participants and beneficiaries.

Defendant AT&T Services now attempts to avoid accountability by characterizing its ongoing fiduciary allocation decisions as purely "settlor" activities, invoking inapposite precedents that address plan amendments rather than the fiduciary administration of existing plan terms. Defendant's arguments are misplaced. Unlike the explicit settlor reservation of authority at issue in *Hutchins II*, the AT&T Plan clearly and explicitly delegates fiduciary discretion to AT&T Services to choose how forfeitures are allocated. Furthermore, Defendant misconstrues both regulatory guidance and recent judicial authority, ignoring multiple recent decisions that explicitly confirm the allocation of forfeitures pursuant to discretionary plan terms constitutes fiduciary conduct subject to ERISA's rigorous standards.

Plaintiff does not seek to rewrite or amend the Plan terms. Rather, Plaintiff simply seeks to enforce Defendant AT&T Services' clear fiduciary obligations under ERISA—to prudently and loyally manage Plan assets in the best interests of participants, not to maximize AT&T, Inc.'s corporate benefits.  Plaintiff's allegations, supported by the Plan's

1  plain language and recent case law, sufficiently plead actionable fiduciary breaches,

2  prohibited transactions, anti-inurement violations, and a failure to monitor.    Thus,

3  Defendant's motion to dismiss must be denied, allowing this action to proceed on its merits.

4  **II.    STATEMENT OF RELEVANT FACTS**

5        **A.    The Plan's Establishment and Funding.**

6        The AT&T Retirement Savings Plan (the "Plan") is a defined contribution,

7  individual account, employee pension benefit plan governed by the Employee Retirement

8  Income Security Act ("ERISA"). (Compl., at ¶¶ 1, 6; Doc. 19-2 ("2020 Plan"), § 1.2 at

9  ECF p. 16, § 3.1(88) at ECF p. 49.)   AT&T Inc. is the Plan Sponsor, and Defendant AT&T

10 Services, Inc. ("AT&T Services" or "Defendant") administers the Plan as the designated

11 Plan Administrator. (Compl., at ¶¶ 7, 8; Doc. 19-2, § 3.1(89) at ECF p. 49, § 3.1(90) at

12 ECF p. 49.)   The Plan's assets, including employee and employer contributions, are held

13 in a trust (the "Trust") established under the Plan, from which distributions, payments of

14 benefits, and Plan administrative expenses are made. (Compl., at ¶¶ 11, 12; Doc. 19-2, §

15 3.1(113) at ECF p. 52; § 14.1 at ECF p. 113; § 14.3.1 at ECF p. 113.)

16       **B.    Participant Vesting, Forfeitures, and Plan Expenses.**

17       Participants in the Plan contribute a portion of their compensation, and AT&T Inc.

18 (which for convenience includes Participating Employers) makes matching and may make

19 discretionary nonelective contributions on their behalf. (Compl., at ¶ 12; Doc. 19-2, § 5.1.1

20 at ECF p. 56, § 5.2.1 at ECF p. 59, § 5.3.1 at ECF pp. 63-64.)   Participants are immediately

21 vested in their own contributions and earnings derived therefrom. (Compl., at ¶ 13 ; Doc.

22 19-2, § 9.1.1 at ECF p. 86.)   Employer contributions, however, generally become fully

23 vested only after a participant completes three years of service. (Compl., at ¶ 13 ; Doc. 19-

24 2, § 9.1.2 at ECF p. 86.)

25       Upon a participant's termination of employment prior to full vesting, the non-vested

26 portion of employer contributions is forfeited back to the Plan. (Compl., at ¶ 14 ; Doc. 19-

27 2, § 9.4 at ECF p. 87.)   The Plan's Form 5500 filings indicate the number of participants

28 who terminated employment during the plan year with accrued benefits that were less than

100% vested (Line 6h) were: 9,243 in 2019 (Doc. 19-3 (2019 Form 5500 attached as Ex. E to Pollak Decl.), at ECF p. 6); 7,637 in 2020 (Doc. 19-3 (2020 Form 5500 attached as Ex. F to Pollak Decl.), at ECF p. 18); 10,952 in 2021 (Doc. 19-3 (2021 Form 5500 attached as Ex. G to Pollak Decl.), at ECF p. 30); 9,622 in 2022 (Doc. 19-3 (2022 Form 5500 attached as Ex. H to Pollak Decl.), at ECF p. 42); and 7,642 in 2023 (Doc. 19-3 (2023 Form 5500 attached as Ex. I to Pollak Decl.), at ECF p. 53).

The Plan addresses the use of these forfeitures in Section 9.5, "USE OF FORFEITURES," which states in its entirety:

> Amounts that are forfeited under Section 9.4 or elsewhere under the Plan during a Plan Year will be applied in a manner determined by the Plan Administrator to reduce Employer Contributions next coming due, **and/or** to fund Employer Corrective Contributions, **and/or to pay expenses incident to the administration of the Plan and Trust**. Prior to such application, forfeited amounts will be held in suspense and invested in the Investment Fund(s) designated for such purposes from time to time by the Plan Administrator.

(Doc. 19-2 ("2020 Plan"), § 9.5 at ECF p. 88 [emphasis added].)

The Plan's Form 5500s (Schedule H, Line 2c "Other income") do not list a separate income item for these forfeitures. (See, e.g., 2019 Form 5500, Sch. H, Line 2c at ECF p. 10; 2020 Form 5500, Sch. H, Line 2c at ECF p. 22; 2021 Form 5500, Sch. H, Line 2c at ECF p. 34; 2022 Form 5500, Sch. H, Line 2c at ECF p. 46; 2023 Form 5500, Sch. H, Line 2c at ECF p. 57.)

Regarding Plan expenses, Section 14.3.1 ("EXCLUSIVE PURPOSE") of the Plan mandates that Trust assets be used exclusively for providing benefits to participants and beneficiaries and defraying reasonable administrative expenses. (Doc. 19-2, § 14.3.1 at ECF p. 113.) Section 14.3.3 ("PAYMENT OF EXPENSES") further stipulates that all expenses incident to the administration of the Plan and Trust shall be paid by the Trustee

from the Trust, unless such expenses are paid by the Employer.  (Doc. 19-2, § 14.3.3 at ECF p. 113.)  According to the Plan's Form 5500 filings for 2021, 2022, and 2023, "all expenses incident to the administration and operation of the Plans are charged to participants." (Compl., at ¶¶ 17, 18, 19.)

The Plan's Form 5500s (Schedule H, Line 2i) detail administrative expenses paid by the Plan:

- In 2019, total administrative expenses were $23,664,000, consisting of "Other" administrative expenses. (2019 Form 5500, Sch. H, Lines 2i(4), 2i(5) at ECF p. 10)

- In 2020, total administrative expenses were $24,620,000, consisting of "Other" administrative expenses. (2020 Form 5500, Sch. H, Lines 2i(4), 2i(5) at ECF p. 22)

- In 2021, total administrative expenses were $22,760,000, consisting of "Other" administrative expenses. (2021 Form 5500, Sch. H, Lines 2i(4), 2i(5) at ECF p. 34)

- In 2022, total administrative expenses were $19,960,000, consisting of "Other" administrative expenses. (2022 Form 5500, Sch. H, Lines 2i(4), 2i(5) at ECF p. 46)

- In 2023, total administrative expenses were $17,399,000, which included $2,891,000 for "Recordkeeping fees" and $14,508,000 for "Investment advisory and investment management fees." (2023 Form 5500, Sch. H, Lines 2i(3), 2i(5), 2i(12) at ECF p. 57)

## C.    Plan Administration and Fiduciary Responsibilities.

AT&T Services, Inc. is the Plan Administrator and a named fiduciary, responsible for the general administration of the Plan. (Compl., at ¶¶ 7, 8; Doc. 19-2, § 3.1(89) at ECF p. 49, § 15.1 at ECF p. 114, § 15.5.1 at ECF p. 115.)  The Plan Administrator exercises discretionary authority in the administration of the Plan, including determining the manner in which forfeited assets are applied, consistent with Plan terms and ERISA. (Compl., at

1  ¶¶ 8, 9; Doc. 19-2, § 9.5 at ECF p. 88, § 15.2 at ECF p. 116.)  The Plan provides that
2  fiduciary responsibilities may be divided among named fiduciaries and other appointed
3  fiduciaries. (Doc. 19-2, § 15.5.2 at ECF p. 116.)

4          **D.      Defendant's Use of Forfeited Assets and Harm to Participants.**

5          Plaintiff alleges that despite Plan language permitting forfeitures to be applied to
6  defray administrative expenses or otherwise benefit participants, Defendants have
7  consistently allocated forfeited employer contributions exclusively to reduce future
8  employer contribution obligations. (Compl., at ¶¶ 15, 16.)  Plaintiff further alleges this
9  practice improperly benefits Defendants by using Plan assets to satisfy obligations that
10 would otherwise be payable by the employer. (Compl., at ¶¶ 15, 16.)

11         Plaintiff contends that this practice harms the Plan and its participants by reducing
12 the Plan assets that would otherwise be available to cover administrative expenses, which,
13 as indicated in Plan filings and the Complaint, are borne by participants. (Compl., at ¶¶ 16,
14 17, 18, 21.)  This misuse diminishes participant account balances, resulting in financial
15 harm to Plaintiff and other Plan participants. (Compl., at ¶¶ 20, 21, 22.)

16 **III.   ARGUMENT**

17         **A.      Plaintiff States a Valid ERISA Breach of Fiduciary Duty Claim.**

18         "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege
19 that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and
20 (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020,
21 1026 (9th Cir. 2021). ERISA requires fiduciaries to discharge their duties "solely in the
22 interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). ERISA also
23 "imposes a 'prudent person' standard by which to measure fiduciaries' investment
24 decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409,
25 419 (2014) (citation omitted); 29 U.S.C. § 1104(a)(1)(B). These duties require that
26 fiduciaries "act in the best interests of the plan participants and beneficiaries." *Barker v.*
27 *Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995).  They are "the highest known
28 to the law." *Johnson v. Couturier*, 572 F.3d 1067, 1077 (9th Cir. 2009).

"To state a claim for breach of fiduciary duty, a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times." *Terraza v. Safeway Inc.,* 241 F.Supp.3d 1057, 1070 (N.D. Cal. 2017).  This is because, "[w]here," as here, "a fiduciary exercises discretionary control over a plan, and assumes the responsibilities that this control entails, the victim of his misconduct will not, at the time he files his complaint, be in a position to describe with particularity the events constituting the alleged misconduct." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).  The allegations are sufficient so long as "the court may be able to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Terraza*, 241 F.Supp.3d at 1070.

> 1.    *The Plan Grants Defendant Discretion on How to Apply Forfeitures, and Defendant Acted as a Fiduciary in Exercising that Discretion.*

Multiple recent decisions—including *McManus v. Clorox Co.* ("*Clorox I*" and "*Clorox II*"), *Rodriguez v. Intuit Inc.*, and *Perez-Cruet v. Qualcomm Inc.*—confirm that when a plan explicitly grants fiduciaries discretion in allocating forfeitures, the fiduciaries' exercise of that discretion is inherently fiduciary, triggering ERISA's duties of loyalty and prudence.  For instance, the court in *Clorox I* held that when a plan confers discretionary authority, fiduciaries must prudently and loyally exercise that discretion in participants' interests—even if the fiduciary's ultimate decisions align with plan terms. *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2024 WL 4944363, at *4-5 (N.D. Cal. Nov. 1, 2024) ("*Clorox I*"); *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087, at *1 (N.D. Cal. Mar. 3, 2025) ("*Clorox II*").  Similarly, in *Intuit*, fiduciaries breached their ERISA duties by consistently reallocating forfeitures to reduce employer contributions without adequately investigating or prioritizing participant interests. *Rodriguez v. Intuit Inc.*, 744 F.Supp.3d 935, 941-42 (N.D. Cal. 2024).  Additionally, *Qualcomm* explicitly recognized that consistently allocating forfeited contributions solely to offset employer contributions could constitute prohibited self-dealing and violate ERISA's anti-inurement

1  provisions, as forfeitures constitute plan assets. *Perez-Cruet v. Qualcomm Inc.*, No. 23-
2  CV-1890-BEN (MMP), 2024 WL 2702207, at \*6-7 (S.D. Cal. May 24, 2024).

3      Here, there is no serious dispute that the Plan granted Defendants explicit discretion
4  over how to allocate forfeitures.  Section 9.5 of the Plan expressly requires AT&T Services,
5  as Plan Administrator, to determine how forfeitures are applied, listing three permissible
6  options:

7          [Forfeited amounts] will be applied in a manner determined by
8          the Plan Administrator to [1] reduce Employer Contributions
9          next coming due, **and/or** [2] to fund Employer Corrective
10         Contributions, **and/or** [3] to pay expenses incident to the
11         administration of the Plan and Trust.

12 (Doc. 19-2, § 9.5 at ECF p. 88 [emphasis added].)

13      The plain language of Section 9.5 is discretionary rather than mandatory.  It does not
14 require forfeitures to be used exclusively for employer contributions, nor does it prescribe
15 any preferred method.  Instead, it explicitly authorizes the use of forfeitures either to offset
16 employer contributions or to pay Plan administrative expenses.  This critical distinction
17 differentiates the Plan here from the plan at issue in *Naylor v. BAE Systems, Inc.*, 2024 WL
18 4112322 (E.D. Va. Sept. 5, 2024).

19      In *Naylor*, the plan's forfeiture provision contained mandatory language that
20 eliminated meaningful fiduciary discretion, explicitly requiring forfeitures to be allocated
21 only toward previously forfeited amounts (for rehired participants) or offsetting new
22 employer contributions. *Id.* at \*5-6. Because the plan in *Naylor* was explicitly "hardwired"
23 to specific mandatory uses of forfeitures, the court dismissed the plaintiff's claims,
24 recognizing that fiduciaries had no discretion to deviate from the plan's clear terms. *Id.* at
25 \*6.

26      Unlike the restrictive language in *Naylor*, AT&T's Plan expressly grants the Plan
27 Administrator authority to determine how to use forfeitures—whether reducing employer
28 contributions, funding corrective contributions, or paying Plan administrative expenses.

Rather than eliminating discretion, Section 9.5 specifically envisions and authorizes fiduciary choice. Plaintiff's claims, therefore, do not seek to rewrite Plan terms but instead seek to hold fiduciaries accountable under ERISA for their failure to exercise expressly granted discretion prudently and loyally for the benefit of participants.

Where a plan explicitly provides fiduciaries the discretion to determine the allocation of forfeitures, the fiduciaries' decisions are necessarily fiduciary acts subject to ERISA's stringent duties. Indeed, Plaintiff is aware of no decision—even among those granting motions to dismiss—that has concluded otherwise. For instance, in *Hutchins v. HP Inc.*, the court explicitly acknowledged that the allocation of forfeitures pursuant to discretionary plan terms constitutes fiduciary conduct. Specifically, the *Hutchins* court concluded that "HP acts as a fiduciary when it takes the concrete action of allocating forfeitures." *Hutchins v. HP Inc.*, No. 5:23-cv-05875-BLF, 2025 WL 404594, at *4 (N.D. Cal. Feb. 5, 2025) ("*Hutchins II*"). Although the court ultimately dismissed the claim due to other plan provisions limiting fiduciary discretion in that particular case, it clearly confirmed that the act of allocating forfeitures involves fiduciary discretion and therefore implicates ERISA's fiduciary duties. *Id.* Similarly, the court in *Sievert v. Knight-Swift Transportation Holdings, Inc.* recognized that the defendants' allocation of forfeitures pursuant to discretionary plan language involved fiduciary discretion and therefore implicated ERISA fiduciary duties. *Sievert v. Knight-Swift Transp. Holdings, Inc.*, No. CV-24-02443-PHX-SPL, 2025 WL 1248922, at *4 (D. Ariz. Apr. 30, 2025). Although the *Sievert* court also dismissed plaintiffs' claims based on specific factual circumstances in that case, it nonetheless reaffirmed the fiduciary nature of discretionary forfeiture allocations. *Id.*; see also, *Madrigal v. Kaiser Found. Health Plan, Inc.*, No. 2:24-cv-05191-MRA-JC, 2025 WL 1299002, at *4 (C.D. Cal. May 2, 2025) ("courts addressing similar actions have routinely found that allocating assets forfeited into ERISA plans amounts to a fiduciary function.").

2.    <u>*The Election on How to Use Forfeitures Is a Fiduciary Activity,*</u>
      <u>*Not a Settlor Activity.*</u>

Seeking to avoid the obvious conclusion that it acted as a fiduciary when exercising its discretion on the use of forfeited funds, Defendant argues that it was acting as a settlor, not a fiduciary. Specifically, Defendant claims it is merely implementing decisions made by AT&T Inc. as the Plan Sponsor in its settlor capacity. Defendant contends that even though the Plan document allows forfeitures to be used for expenses, other provisions (it generally refers to Sections 14.3.3 and 14.3.4 regarding payment of expenses from the Trust and allocation to participant accounts) effectively remove any discretion from AT&T Services as the Plan Administrator. Defendant argues that, similar to the *Hutchins II* case it cites, these provisions mean administrative expenses must be charged to participant accounts unless AT&T Inc., as the employer, affirmatively decides to pay them, including by directing forfeitures for that purpose. Therefore, Defendant claims AT&T Services is merely implementing the Plan's design, which it interprets as prioritizing the use of forfeitures to reduce employer contributions, and thus was not acting as a fiduciary when making the challenged decision.

This argument, however, misapplies the settlor-fiduciary distinction and ignores the plain language of the Plan that delegates discretionary authority over Plan assets to AT&T Services as Plan Administrator. A settlor function involves decisions related to the formation, design, amendment, or termination of the ERISA plan itself. When acting as a settlor, an employer is free to define the structure of the plan and is not subject to fiduciary standards. Thus, when an employer adopts, modifies, or discontinues an employee benefit plan—decisions analogous to a trust creator setting the terms of a trust—it does not owe fiduciary duties to plan participants. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries," but rather "are analogous to the settlors of a trust."); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999).

In contrast, an employer or its appointed administrator acts in a fiduciary

administrative capacity when it exercises discretion or control regarding plan management, administration, or the handling of plan assets. Fiduciary actions involve decision-making about how the plan operates day-to-day, including choices regarding investments, plan expenses, allocation of forfeitures, claims administration, and communications with participants. Fiduciaries are bound by ERISA's stringent standards of loyalty and prudence, requiring that they act solely in the best interests of the plan participants and beneficiaries, and avoid conflicts of interest. *Clorox I*, 2024 WL 4944363, at *4 (finding allocation of forfeitures was fiduciary in nature); *Intuit*, 744 F.Supp.3d at 943 ("Any decisions relating to the management of plan assets should cautiously be presumed to be fiduciary in nature."); *Qualcomm*, 2024 WL 2702207, at *3 (holding that choosing how to use forfeitures was subject to fiduciary obligations). This critical distinction means that when an employer is merely designing or amending a plan's terms—settlor activities—it enjoys significant latitude. However, once it, or its designated Plan Administrator, moves beyond design and engages in discretionary plan management—such as choosing how expenses and forfeited assets will be allocated—it must satisfy fiduciary standards, subjecting it to ERISA's fiduciary duties and potential liability for breaching those duties. *Clorox I*, 2024 WL 4944363, at *4; *Intuit*, 744 F.Supp.3d at 943.

Here, Plaintiff does not challenge AT&T Inc.'s settlor decision to include Section 9.5 or Section 14.3 in the Plan. Instead, Plaintiff challenges how AT&T Services, the named Plan Administrator, has exercised the discretion explicitly conferred upon it by Section 9.5 regarding the use of forfeitures, which are undeniably Plan assets. Once AT&T Inc., acting as settlor, designed the Plan to give AT&T Services as Plan Administrator choices for the use of these assets, AT&T Services' subsequent decisions on how to allocate those assets are subject to ERISA's stringent fiduciary duties of loyalty and prudence. Section 9.5 of the Plan is explicit in granting this discretion to AT&T Services as Plan Administrator. (Doc. 19-2, § 9.5 at ECF p. 88.)

The permissive "and/or" language, coupled with the directive that forfeitures "will be applied in a manner determined by the Plan Administrator," unambiguously confers

discretion upon AT&T Services.  It does not, as Defendant suggests, outline a rigid, non-discretionary settlor-defined mechanism that AT&T Services merely implements.  The decision by AT&T Services to consistently choose the option that reduces employer contributions, while Plan participants bear the administrative expenses that these same forfeitures could have defrayed, is precisely the type of discretionary control over plan assets that ERISA defines as a fiduciary function. See 29 U.S.C. § 1002(21)(A)(i) (a person is a fiduciary to the extent they exercise "any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets").

Defendant's attempt to analogize this case to *Hutchins II*, and to argue that Plan Section 14.3 (specifically citing §§ 14.3.3 and 14.3.4) strips AT&T Services of this discretion is unavailing.  The Plan language regarding expenses, when read correctly and in its entirety, establishes the framework within which the Plan Administrator's discretion under Section 9.5 operates.  Section 14.3.3 ("Payment of Expenses") states, in relevant part:

> All expenses incident to the administration of the Plan and Trust […] will be paid by the Trustee ***from the Trust*** and, until paid, ***will constitute a claim against the Trust*** that is paramount to the claims of Participants and beneficiaries, provided, however, that (i) the obligation of the Trustee to pay such expenses from the Trust will cease to exist ***to the extent*** such expenses are paid by the Employer [….]

(Doc. 19-2 ("2020 Plan"), § 14.3.3 at ECF p. 113 [emphasis added].)

This language makes clear that the Trust is the default source of payment for administrative expenses unless the Employer pays them.  It does not, as Defendant implies, remove discretion regarding how the Trust fulfills this obligation.  Section 9.5 then provides AT&T Services, as Plan Administrator, with an explicit choice for using certain Plan assets held within the Trust—forfeitures—"to pay expenses incident to the

– 11 –

administration of the Plan and Trust." If AT&T Services exercises this discretion, the Trust pays its expenses using forfeitures. If it does not, and the Employer also does not pay, then expenses are still paid from the Trust, but are allocated to participant accounts as per Section 14.3.4. The fiduciary decision lies in AT&T Services' choice not to use available Plan assets (forfeitures) to cover these expenses for the benefit of participants, thereby allowing those expenses to be charged to participants, while simultaneously using those same forfeitures to directly reduce employer contributions.

The Plan language here is significantly different from the plan in *Hutchins II*. The *Hutchins II* court focused on its section 17(b) of the plan before it, which explicitly reserved to the company (settlor) "complete and unfettered discretion whether an expense of the Plan or Trust shall be paid by the Participating Companies or out of the Trust Fund," and critically added that this section "shall not be construed to require the Participating Companies to pay any portion of the expense of the Plan." 2025 WL 404594, at *4. This language in *Hutchins II* directly vested the decision-making authority regarding the source of expense payment (company vs. trust) in the settlor on an ongoing basis. In contrast, the Plan's Section 14.3.3 establishes the Trust as liable for expenses unless the Employer pays, and Section 9.5 grants the Plan Administrator discretion over how certain Trust assets (which include forfeitures) are applied, including for those very expenses. This is not a retained settlor power to decide year-to-year if the company will pay; it is a delegated administrative power to the Plan Administrator to manage Plan assets for Plan purposes.

Furthermore, the *Hutchins II* court's reliance on *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), for the broad proposition that all decisions concerning the allocation of expenses are settlor functions, appears to misinterpret Supreme Court precedent. *Hughes Aircraft and Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), dealt with plan amendments and design choices—quintessential settlor activities. The Supreme Court in those cases distinguished such settlor acts from the administration of a plan under its existing terms. Indeed, ERISA's fiduciary duties clearly apply to decisions involving the "management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A). Allocating existing Plan assets like

1    forfeitures, as permitted by discretionary language in Section 9.5, falls squarely within this
2    fiduciary responsibility, not within the realm of plan design or amendment.

3        Therefore, Defendant's reliance on *Hutchins II* is misplaced. AT&T Services'
4    decision-making process under Section 9.5 of the Plan, concerning how to use Plan assets
5    (forfeitures), constitutes fiduciary conduct subject to ERISA's duties of loyalty and
6    prudence.

7                    3.    *Defendant Breached Its Fiduciary Duty.*

8        Under ERISA, fiduciaries must act "for the exclusive purpose of providing benefits
9    to participants and their beneficiaries and defraying reasonable expenses of administering
10   the plan." 29 U.S.C. § 1104 (a)(1)(A)(ii).  The Plan permits discretion to use forfeitures for
11   either covering Plan expenses or for employer contributions.  Plaintiff alleges Defendant
12   systematically chose the latter, effectively reducing Defendant's own contribution costs
13   rather than alleviating participant-borne Plan expenses.

14       By using Plan assets (forfeitures) to lower new employer contributions, Defendant
15   confers a direct dollar-for-dollar benefit on AT&T Inc.  Courts have deemed such
16   allegations sufficient to state a loyalty breach. *Qualcomm, supra*, 2024 WL 2702207, at *2;
17   *Intuit*, *supra*, 744 F.Supp.3d at 944.

18       ERISA also requires fiduciaries to act "with the care, skill, prudence, and diligence"
19   that a prudent person would exercise under similar circumstances. 29 U.S.C.
20   § 1104(a)(1)(B). Plaintiff's allegations that Defendant diverted Plan assets (i.e., forfeitures)
21   to offset new contributions – despite the Plan's expense-pay option – plausibly show an
22   imprudent choice favoring Defendants at participants' expense.  Courts recognize that
23   fiduciaries may breach prudence by forgoing available means to defray participant costs.
24   *Intuit*, 744 F.Supp.3d at 945; *Qualcomm*, 2024 WL 2702207, at *3.

25       Even if Defendant argued the Plan's documents required them to use forfeitures
26   solely to offset contributions (which the Plan language itself refutes by granting discretion),
27   ERISA's fiduciary duties prevail over conflicting plan terms. 29 U.S.C. § 1104(a)(1)(D);
28   see *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014).  As *Intuit* put it, Plan

1  provisions "alone would not excuse [Defendants] from fulfilling [their] fiduciary duties
2  under ERISA." *Intuit*, 744 F.Supp.3d at 944.

3      Accordingly, Defendant's repeated decision to channel forfeitures toward employer
4  contributions instead of participants' benefit states a viable claim for breach of fiduciary
5  duty.

6      The recent decision in *Clorox II*, aligns precisely with the circumstances presented
7  here.   In *Clorox II*, the plan similarly allowed fiduciaries discretion between using
8  forfeitures to offset employer contributions or pay plan expenses, without mandating a
9  priority. *Clorox II*, 2025 WL 732087 at *1-3.  The court emphasized fiduciaries facing such
10 discretion must carefully evaluate options and choose in the best interests of participants,
11 not the employer. *Id*. at *3.

12     The *Clorox II* court rejected arguments similar to those made by Defendant here.
13 First, it held fiduciaries cannot simply shield themselves from ERISA liability by strictly
14 adhering to plan language without adequately considering participants' interests or
15 engaging in impartial deliberation. *Id.* at *4.  Second, the court emphasized fiduciaries must
16 prioritize participants' interests when exercising discretion explicitly granted by the plan,
17 even if the plan allows alternatives benefiting the employer. *Id.* at *5.

18     Plaintiff here contends Defendant breached fiduciary duties by consistently opting
19 to offset employer contributions, financially benefiting AT&T, Inc. directly at participants'
20 expense. (Compl., at ¶¶ 15, 16, 20-22.)  The *Clorox II* decision supports Plaintiff's position
21 that fiduciaries cannot justify decisions based solely on plan language if they neglect proper
22 fiduciary diligence and prioritize their economic interests over participants'. *Clorox II*,
23 2025 WL 732087 at *3-4.

24     Plaintiff's claims here align directly with *Clorox*'s reasoning. Defendant reserved
25 fiduciary discretion within the Plan but exercised it in a self-serving manner without
26 adequately considering participants' interests, plausibly stating fiduciary breach claims
27 under ERISA's loyalty and prudence standards. See *Clorox II*, 2025 WL 732087 at *3-5;
28 *Qualcomm, supra,* 2024 WL 2702207, at *2; *Intuit, supra,* 744 F.Supp.3d at 944-945.

4. _Plaintiff's Theory of Liability is Fully Consistent with Regulatory and Legislative Guidance._

Defendant argues that Plaintiff's theory conflicts with established legislative and regulatory guidance purportedly permitting the use of forfeitures to offset future employer contributions.    However, Defendant misconstrues both the regulatory context and Plaintiff's actual claims.  Defendant heavily relies on the Treasury Department's proposed regulations and related IRS guidance, asserting a longstanding administrative practice authorizing forfeiture usage to offset employer contributions. Yet, these arguments fundamentally miss the point of Plaintiff's claims.

Critically, Plaintiff does not dispute that regulations and the Internal Revenue Code (IRC) allow plans, as a matter of plan design, to specify forfeitures "will be used" to offset employer contributions.  Defendant overlooks the fact that Plaintiff's claims here do not challenge whether such a design could theoretically exist under ERISA or the IRC.  Instead, Plaintiff's claim arises because the AT&T Retirement Savings Plan explicitly does not mandate such a design.  Rather, it provides fiduciaries explicit discretion to use forfeitures either to offset employer contributions or to pay plan expenses. (Doc. 19-2, § 9.5 at ECF p. 87.)  This fiduciary discretion triggers ERISA's stringent requirement that fiduciaries must act "solely in the interest" of participants. 29 U.S.C. § 1104(a)(1)(A).

Defendant misapplies Treasury Regulation § 1.401-7(a) and its corresponding IRC provision, 26 U.S.C. § 401(a)(8), incorrectly suggesting that these rules categorically mandate forfeitures be used to offset employer contributions. Defendant fails to acknowledge that this regulation, by its own terms, explicitly applies only to "pension" plans providing "definitely determinable benefits," and not to defined contribution profit-sharing plans like the AT&T Retirement Savings Plan. See 26 C.F.R. §§ 1.401-7(a), 1.401-1(b)(1)(i)-(ii); Rev. Rul. 71-313, 1971 WL 26693 ("section 1.401-7 of the Income Tax Regulations do[es] not extend to profit-sharing plans.")  Multiple courts have explicitly rejected the same arguments Defendant now advances, recognizing that these Treasury regulations do not control forfeiture usage in profit-sharing defined contribution plans. See,

1  *Hutchins v. HP Inc.*, 737 F.Supp.3d 851, 859 (N.D. Cal. 2024) ("*Hutchins I*") ("Plaintiff is

2  correct that 26 C.F.R. § 1.401-7(a) does not apply to the Plan.").

3     Similarly misplaced is Defendant's reliance on the legislative history of the Tax

4  Reform Act of 1986 and the related House Conference Report, which merely states

5  forfeitures "may" be used to offset employer contributions. This legislative guidance

6  neither mandates forfeiture usage exclusively for employer contributions nor precludes

7  fiduciaries from prudently using forfeitures to defray legitimate plan expenses or enhance

8  participant benefits.

9     Defendant also erroneously suggests that the Treasury Department's 2023 proposed

10  regulations somehow require or even endorse exclusive use of forfeitures to offset

11  employer contributions. However, these regulations explicitly clarify only that forfeitures

12  "may" be used to reduce employer contributions, pay plan administrative expenses, or

13  increase participant benefits, without dictating a mandatory priority or prohibiting

14  fiduciary discretion. See Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg.

15  12282-01 (Feb. 27, 2023).  As courts have recognized, such proposed regulations lack legal

16  effect and cannot override ERISA's fiduciary duties. *Qualcomm*, 2024 WL 2702207, at *7

17  ("the rule has not been adopted and has no force of law").

18     Even if the Treasury regulations and legislative history supported Defendant's

19  interpretation—which they clearly do not—such authority could not displace ERISA's

20  fiduciary obligations. ERISA fiduciaries must act "solely in the interest" of plan

21  participants, a duty that explicitly applies here given the fiduciary discretion set forth in

22  the Plans. Where forfeitures could reduce administrative expenses currently charged

23  directly to participant accounts, JPMorgan's consistent decision to prioritize its economic

24  interests violates ERISA's duties of loyalty and prudence. *Qualcomm*, 2024 WL 2702207,

25  at *2 ("Plaintiff plausibly claims that Defendants breached their fiduciary duty…by making

26  a choice that put the employer's interests above the interests of Plan participants."); *Clorox*

27  *II*, 2025 WL 732087, at *3-4 (fiduciaries must evaluate and prioritize participants' interests

28  over their own).

**PLAINTIFF'S AMENDED OPPOSITION TO THE MOTION TO DISMISS**
**BY DEFENDANTS (CASE NO. 2:25-CV-00676-ODW-PVC)**

1  JPMorgan's reliance on irrelevant or non-controlling regulatory and legislative
2  guidance fails to justify their consistent fiduciary decisions favoring JPMorgan at the
3  expense of Plan participants. Plaintiff's claims thus align squarely with ERISA's core
4  fiduciary principles and controlling jurisprudence and should survive dismissal.

5  **B.    Plaintiff Properly Pled an Anti-Inurement Claim.**

6  Defendant's use of forfeitures to offset employer contributions inures to their benefit
7  and violates ERISA's anti-inurement provision.  "[T]he assets of a plan shall never inure
8  to the benefit of any employer and shall be held for the exclusive purpose of providing
9  benefits to participants in the plan […] and defraying reasonable expenses of administering
10 the plan." 29 U.S.C. § 1103(c)(1).  Forfeited funds are Plan assets. *Intuit, supra*, 744
11 F.Supp.3d at 943 ("forfeitures are plan assets," and forfeited funds "remain plan assets");
12 *Qualcomm, supra*, 2024 WL 2702207 at *6 (forfeited "[n]onvested contributions fall
13 within the functional definition of assets of the pension plan").

14 Where plan fiduciaries use forfeitures to reduce their "own financial burden to make
15 contributions," courts have held "it is easy to come to the conclusion" a "benefit" inured
16 in their favor. *Qualcomm* at *6. Alleging the employer "received a benefit amounting to
17 'millions of dollars in contribution expenses'" plausibly states an anti-inurement claim.
18 *Intuit* at 946; see also *Randall, supra*, 2024 WL 713997, at *6 (in non-forfeiture cases
19 courts have also held that using Plan assets "to satisfy [employer] matching contribution
20 obligations. . .plausibly alleges" a benefit).

21 It is irrelevant whether the Plan mandates use of forfeitures to offset employer
22 contributions, or merely gives discretion to do so, because ERISA's statutory duties
23 "trump[ ] the instructions of a plan document." *Dudenhoeffer, supra*, 573 U.S. at 421; 29
24 U.S.C. § 1104(a)(1)(D) (fiduciaries can follow Plan documents only insofar as they are
25 consistent with ERISA).

26 **C.    Plaintiff Properly Pled a Claim for Prohibited Transactions.**

27 ERISA § 1106(a)(1) bars fiduciaries from causing the Plan to engage in certain
28 transactions with a "party in interest," and § 1106(b)(1) prohibits fiduciaries from dealing

1    with Plan assets in their own interest.  Plaintiff alleges a direct transaction – Plan assets

2    (forfeitures) "exchanged" or reallocated to offset future employer contributions. Courts

3    recognize such offsets as "use" of Plan assets within ERISA's prohibited-transaction

4    provisions. *Intuit*, 744 F.Supp.3d at 948-949; *Qualcomm*, 2024 WL 2702207, at *6.

5         The Plan designates Defendant as named fiduciaries, giving them the authority (and

6    discretion) to administer the Plan. (Doc. 19-2, § 15.5.1 at ECF p. 115.)  Using forfeited

7    Plan assets to reduce the participating employers' contribution obligations is self-dealing

8    in direct violation of Section 1106(b)(1).  Indeed, other courts have recently held that

9    allegations that plan assets were used to offset employer contributions satisfy the "benefit"

10   element for a prohibited transaction under Section 1106(a)(1)(D). *Randall on behalf of*

11   *Wells Fargo & Co. 401(k) Plan v. GreatBanc Tr. Co.*, 2024 WL 713997, at *6 (D. Minn.

12   2024) (allegation that defendant "'reclassified dividends on the Plan's Preferred Stock'

13   were used to Wells Fargo's benefit—to satisfy its matching contribution obligations . .

14   .plausibly alleges" section 1106(a)(1)(D) prohibited transaction claim).

15        **D.    Plaintiff Properly Pled a Claim for Failure to Monitor.**

16        Finally, Plaintiff's failure-to-monitor claim arises from Defendant's responsibility

17   to ensure any individuals or committees administering the Plan comply with ERISA.

18   29 C.F.R. § 2509.75-8, FR–17; *Solis v. Webb*, 931 F.Supp.2d 936, 953 (N.D. Cal. 2012)

19   ("Implicit within the duty to select and retain fiduciaries is a duty to monitor their

20   performance.").  Because Plaintiff sufficiently alleges multiple fiduciary breaches –

21   through self-serving use of forfeitures, an anti-inurement violation, and prohibited

22   transactions – Plaintiff also states a plausible claim that Defendant failed to oversee and

23   correct these improper practices.

24   **IV.   CONCLUSION**

25        For each of the foregoing reasons, Plaintiff respectfully requests that the Court deny

26   Defendant's motion to dismiss.

27   / / /

28   / / /

Dated:  May 8, 2025                    HAFFNER LAW PC

By:   _/s/ Alfredo Torrijos_____
     Joshua H. Haffner
     Alfredo Torrijos
     Vahan Mikayelyan

*Counsel for Plaintiff Luis Hernandez*

**PLAINTIFF'S AMENDED OPPOSITION TO THE MOTION TO DISMISS
BY DEFENDANTS (CASE NO. 2:25-CV-00676-ODW-PVC)**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Luis Hernandez certifies that this brief contains 5,848 words, which complies with the word limit of L.R. 11-6.1.

Executed on May 8, 2025.

By: */s/ Alfredo Torrijos*
Alfredo Torrijos

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 8, 2025.


By: */s/ Alfredo Torrijos*
Alfredo Torrijos

CERTIFICATE OF SERVICE